# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

DEBRA DENICE HATFIELD,

    Ms. Hatfield,

v.

NANCY BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

Case No. 2:17-cv-00105-TLF

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Debra Denice Hatfield has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court affirms the Commissioner's decision denying benefits.

## PROCEDURAL HISTORY

Ms. Hatfield filed an application for SSI benefits on July 28, 2014, and another one for disability insurance benefits on August 6, 2014, alleging in both applications that she became disabled beginning May 14, 2014. Dkt. 10, Administrative Record (AR) 18. Both applications were denied on initial administrative review and on reconsideration. *Id.* A hearing was held before an administrative law judge (ALJ) on August 16, 2016. AR 36-76. Ms. Hatfield and a vocational expert appeared and testified.

In a written decision on September 6, 2016, the ALJ found that Ms. Hatfield could

ORDER - 1

perform her past relevant work and other jobs existing in the national economy, and therefore that she was not disabled. *See* AR 18-30. The Appeals Council denied Ms. Hatfield's request for review on November 30, 2016, making the ALJ's decision the final decision of the Commissioner. AR 1. Ms. Hatfield appealed that decision in a complaint filed with this Court on January 26, 2017. Dkt. 3; 20 C.F.R. §§ 404.981, 416.1481.

Ms. Hatfield seeks reversal of the ALJ's decision and remand for an award of benefits, or in the alternative for further administrative proceedings, arguing the ALJ erred:

(1) in not finding depression and anxiety to be severe impairments;

(2) in discounting Ms. Hatfield's subjective testimony;

(3) in evaluating the medical opinion evidence;

(4) in assessing Ms. Hatfield's residual functional capacity ("RFC"); and

(5) in finding Ms. Hatfield could perform her past relevant work and other jobs existing in significant numbers in the national economy.

For the reasons set forth below, the Court finds that the ALJ did not err as Ms. Hatfield alleges. Accordingly, the Court affirms the decision to deny benefits.

## DISCUSSION

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.520, 416.920. If the ALJ finds the claimant disabled or not disabled at any particular step, the ALJ makes the disability determination at that step and the sequential evaluation process ends. *See id.* At issue here is the ALJ's determination at step two that certain conditions are not severe impairments, her weighing of different pieces of medical evidence, her discounting of Ms. Hatfield's testimony on her subjective symptoms, and her resulting assessment of Ms. Hatfield's RFC and conclusion that she can perform her past work and other jobs in the national economy.

ORDER - 2

This Court affirms an ALJ's determination that a claimant is not disabled if the ALJ applied "proper legal standards" in weighing the evidence and making the determination and if "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 862 F.3d 987, 996 (2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

This Court will thus uphold the ALJ's findings if "inferences reasonably drawn from the record" support them. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If more than one rational interpretation can be drawn from the evidence, then this Court must uphold the ALJ's interpretation. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

I. The ALJ's Step Two Determination

At step two of the sequential evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. §§ 404.1520, 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); Social Security Ruling (SSR) 96-3p, 1996 WL 374181, at *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b); SSR 85- 28, 1985 WL 56856, at *3. An impairment is not severe if the evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856, at *3; *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988).

ORDER - 3

The step two inquiry is a *de minimis* screening device used to dispose of groundless claims. *Smolen*, 80 F.3d at 1290. The Ninth Circuit recently emphasized that this inquiry "is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, No. 14-35976, 2017 WL 3862450, at *5 (9th Cir. Sept. 5, 2017) (rejecting claim that ALJ erred after second hearing, where ALJ found new severe impairments but did not change RFC). The court noted that in assessing a claimant's RFC an ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* (citing Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996)). Thus, the RFC "should be *exactly the same* regardless of whether certain impairments are considered 'severe' or not." *Id.* (emphasis added).

The Ninth Circuit concluded, in the case before it, that because the ALJ decided step two in the claimant's favor and was required to consider all impairments in the RFC, whether "severe" or not, "[a]ny alleged error is therefore harmless and cannot be the basis for a remand." *Buck*, 2017 WL 3862450, at *5 (citing *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).

Here, Ms. Hatfield contends that the ALJ erred in failing to find anxiety and depression to be severe impairments at step two. She contends the ALJ ignored evidence that Ms. Hatfield complained of anxiety and depression symptoms for years, that her providers diagnosed her with and treated her for those conditions, and that those conditions limited her ability to work. *See* AR 570, 573, 584, 601, 608, 622; *see also* 42, 45, 56, 67.

Because the ALJ decided step two in Ms. Hatfield's favor, however, the ALJ was already required to consider evidence of her anxiety and depression in assessing her RFC. *See Buck*, 2017 WL 3862450, at *5.

ORDER - 4

Ms. Hatfield also contends that the ALJ erred in failing to address her depression and anxiety at step three and in her RFC. She again points to records that indicate she reported depression and anxiety to her providers and received medication, AR 297, 425, 571, and to her testimony that stress affects her behavior at work, AR 56, 68. But the ALJ reasonably addressed this evidence in according significant weight to the opinion of Dr. Kester, the state psychological consultant, that Ms. Hatfield does not have a severe mental health impairment. AR 28. She noted that Ms. Hatfield's mental-status exams do not show abnormal results; that Ms. Hatfield "remains quite functional" in working full time and occasionally catering; that despite testifying that she sometimes "snaps" at people at work, the record contains no similar reports and Ms. Hatfield's employer has never disciplined her for that or any other issue; and that Ms. Hatfield had not sought mental-health treatment before March 2016. *See* AR 28, 56, 571. The ALJ was entitled to review this evidence and draw reasonable conclusions. *See Allen*, 749 F.2d at 579. The different conclusions Ms. Hatfield asks this Court to draw do not compel a finding of error.

## II. The ALJ's Evaluation of Ms. Hatfield's Testimony

Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as substantial evidence supports that determination. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d. 821, 834 (9th Cir. 1995) (citation omitted).

ORDER - 5

Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. An ALJ cannot reject a claimant's pain testimony solely on the basis of a lack of objective medical evidence in the record. *See Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995). Such a determination can satisfy the clear and convincing requirement when the ALJ "specif[ies] what complaints are contradicted by what clinical observations." *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998); *see also Lester*, 81 F.3d at 834.

Here, Ms. Hatfield testified that that at times during her current job she can only sit for 10-15 minutes at a stretch, AR 43; that she has missed work due to vertigo and that it limits her ability to use stairs, AR 44; that the oxycodone she takes for pain makes her drowsy, AR 46-47, 65-66; that her angina prevents her from buying many groceries, AR 54; and that she cannot carry laundry due to knee pain, AR 57. She also testified that in her current job she has been absent over three times. AR 56-57.

The ALJ found that Ms. Hatfield's "statements concerning the intensity, persistence, and limiting effects of . . . [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 24.

Among the reasons the ALJ offered was that the record shows Ms. Hatfield has worked full time for multiple stretches of the alleged disability period. The ALJ found that Ms. Hatfield's ability to perform these jobs contradicts her testimony that chronic pain prevents her from working. AR 24. Specifically, the ALJ pointed to evidence regarding Ms. Hatfield's: (1) part-time work at Burger King that required standing, (2) full-time work as a cook at Shuga Jazz Bistro in January 2015, (3) temporary, full-time work as a move coordinator for a storage

ORDER - 6

company, both during the summer of 2015 and at the time of the hearing in 2016, and (4) occasional catering. *See* AR 24, 41-44, 515.

An ALJ may rely on a claimant's daily activities to support an adverse credibility finding when those activities contradict the claimant's subjective complaints or when they are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). A claimant need not be utterly incapacitated to be disabled, and the "sporadic ability to work" is not inconsistent with disability. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Lester*, 81 F.3d at 833. Rather, the Commissioner must evaluate a claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a); *Lester*, 81 F.3d at 833.

Here, Ms. Hatfield contends that her stretches of full-time employment, including the job she was performing at the time of the hearing, were "unsuccessful work attempts" that did not amount to "substantial gainful activity." *See* 20 C.F.R. § 404.1574(c). This argument is not on point – in fact, the ALJ found that Ms. Hatfield's periods of work were *not* substantial gainful activity. AR 20-21. The ALJ instead considered Ms. Hatfield's work in determining that the record was inconsistent with the severity of symptoms that Ms. Hatfield alleges.

The ALJ did not err in finding that Ms. Hatfield's performance at three different jobs undermines her subjective symptom testimony. Ms. Hatfield contends that her testimony shows her condition deteriorated from one summer to the next in her job at the storage facility. Dkt. 13, p. 14. She testified that her pain causes her to "snap at people" in the office and on the phone. AR 46. This does not show "'more than a minimal effect'" on Ms. Hatfield's ability to work, however, and so does not contradict the ALJ's reasoning. *See Smolen*, 80 F.3d at 1290 (quoting SSR 85-28). Ms. Hatfield did not testify, nor does the record indicate, that her conditions significantly impaired her ability to perform work activities, let alone forced her to stop working,

ORDER - 7

at her full-time jobs at the storage facility or the jazz club. As noted, she was still working at the storage facility at the time of the hearing. AR 41.

Because the ALJ offered a clear, convincing, and supported reason to discount Ms. Hatfield's testimony about the severity of her symptoms, she did not err in doing so. *See Lester*, 81 F.2d at 834.

### III. The ALJ's Evaluation of the Medical and Other Opinion Evidence

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "'questions of credibility and resolution of conflicts are functions solely of the [ALJ]'" and this Court will uphold those conclusions. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (quoting *Waters v. Gardner*, 452 F.2d 855, 858 n. 7 (9th Cir. 1971)); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). As part of this discretion, the ALJ determines whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant" in deciding how to weigh medical opinions. *Id.* at 603.

The ALJ must support his or her findings with "specific, cogent reasons." *Reddick*, 157 F.3d at 725. To do so, the ALJ sets out "a detailed and thorough summary of the facts and conflicting clinical evidence," interprets that evidence, and makes findings. *Id.* The ALJ does not need to discuss all the evidence the parties present but must explain the rejection of "significant probative evidence." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). The ALJ may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. And the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

ORDER - 8

In general, the ALJ gives more weight to a treating physician's opinion than to the opinions of physicians who do not treat the claimant. *See Lester*, 81 F.3d at 830. Nonetheless, an ALJ need not accept a treating physician's opinion that "is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d at 1195; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

To reject the uncontradicted opinion of either a treating or examining physician, an ALJ must provide "clear and convincing" reasons. *Lester*, 81 F.3d at 830. When other evidence contradicts the treating or examining physician's opinion, the ALJ must still provide "specific and legitimate reasons" to reject that opinion. *Id.* at 830-31. In either case, the ALJ's reasons must be supported by substantial evidence in the record. *Id.* Next, an ALJ gives greater weight to an examining physician's opinion than that of a non-examining physician. *Id.* at 830. Finally, a non-examining physician's opinion may constitute substantial evidence for an ALJ's findings if that opinion "is consistent with other independent evidence in the record." *Tonapetyan*, 242 F.3d at 1149.

### A. Treating Physician: Dr. Ignatius Medani, MD

Dr. Medani evaluated Ms. Hatfield and recorded his assessment on a check-the-box form in March 2016. AR 586. He stated that he had treated Ms. Hatfield for one year to that point, for "GLB Pain" and advanced osteoarthritis in her knee. AR 586. He checked that Ms. Hatfield is likely to be absent from work four or more times per month due to those impairments. AR 586. He wrote that Ms. Hatfield can lift 5 pounds frequently and 10 pounds occasionally and carry 5 pounds frequently and 7.5 pounds occasionally. AR 587. He also wrote that Ms. Hatfield can frequently lift 2.5 pounds over her head, and 5 pounds occasionally. *See* AR 588. And he

ORDER - 9

checked that Ms. Hatfield can sit, stand, and walk 3-4 hours in an 8-hour workday and would "require the option to sit/stand at will." AR 587. He also found that Ms. Hatfield "requires the use of a cane or other assistive device, at least sometimes," and wrote that she can ambulate 500 feet without one. AR 587-588. He wrote that Ms. Hatfield has a "definite inability to ambulate [and] stand for [greater than] 5-10 min." AR 588. One month later, Dr. Medani prescribed a walker for Ms. Hatfield. *See* AR 590.

The ALJ gave "minimal weight" to Dr. Medani's opinion. AR 27. In support, the ALJ found that Dr. Medani's "checkbox form is inconsistent with medical evidence closest in time to his opinion," he noted "normal exam findings" in a March 2016 exam, his "medical notes show minimal exams and abnormal conditions during treatment," and "his concurrence with the findings of Ms. Mary Muszynski, OT, with no reference no [sic] to any evidence undermines the accuracy of his opinion." AR 27.

These were clear and convincing reasons to reject Dr. Medani's opinion. The record supports the ALJ's finding that Dr. Medani's opinions lacked support. An ALJ "may 'permissibly reject[ ] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions.'" *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)). The form that Dr. Medani signed provided space after each section to "Identify the particular medical or clinical findings . . . which support your assessment of limitations and why the findings support the assessment." AR 587-89. Other than writing that Ms. Hatfield has a "definite inability to ambulate [and] stand [greater than] 5-10 minutes," Dr. Medani left these explanatory sections blank. AR 587-88. Beneath his signature on the last page, he wrote "Concur with the timeline of physical therapy." AR 588. Ms. Hatfield contends that this shows Dr. Medani reviewed and adopted Ms. Muszynski's opinions, which she

ORDER - 10

contends the ALJ also erred in rejecting. As discussed below, however, the ALJ offered germane reasons for rejecting Ms. Muszynski's opinions, which have the same deficits as Dr. Medani's. *See* AR 27, 563.

The record likewise supports the ALJ's finding that Dr. Medani's form opinions are inconsistent with his contemporaneous treatment notes, which showed no abnormal findings in physical exams the month prior to his opinions. AR 27, 594-95, 608-09, 615-16, 622-23. Dr. Medani filled in only the first page of the physical examination portion in each of the treatment notes, finding nothing abnormal in Ms. Hatfield's skin, eyes, ENT, neck, or respiratory system. He left the second page blank, including the spaces for musculoskeletal and neurological results. Although Ms. Hatfield asserts that Dr. Medani found numbness, tingling and burning sensations, and joint and back pain, Dr. Medani circled these symptoms in one of the forms' "review of systems" section, which records a patient's self-reported medical history, not in the "physical examination" section, which would indicate objective findings.[1] AR 615.

Thus, Dr. Medani's form opinion provided no explanation for the limitations he assessed for Ms. Hatfield, and his treatment notes also do not support those limitations. The record supports the ALJ's finding that a lack of citations to medical evidence undermines Dr. Medani's opinions, and that finding is a clear and convincing reason to reject those opinions. *Molina*, 674 F.3d at 1111.

B. <u>Non-Acceptable Medical Source: Mary Muszynski, OTR</u>

Ms. Hatfield contends that the ALJ failed to offer germane reasons to reject the opinion of Ms. Muszynski, an occupational therapist who works with Dr. Medani. Ms. Muszynski

---

[1] "The "review of systems" is a list of questions, arranged by organ, designed to uncover dysfunction or disease." *Allen v. Colvin*, No. 215CV01191TSZDWC, 2016 WL 7368128, at *2 n.3 (W.D. Wash. Jan. 8, 2016), *report and recommendation adopted*, No. 215CV01191TSZDWC, 2016 WL 7368129 (W.D. Wash. Feb. 8, 2016)

ORDER - 11

performed a physical evaluation on the same day that Dr. Medani signed his form opinion, which referenced Ms. Muszynski's evaluation. *See* AR 588. Her evaluation consists of one page summarizing Ms. Hatfield's functional limitations. AR 563. She opined that Ms. Hatfield can sit, stand, or walk for only 15-20 minutes at a time, or 3-4 hours in an 8 hour day. *See id.* She also found Ms. Hatfield can only frequently lift and carry 5 pounds. *See id.* She found Ms. Hatfield can lift only 10 pounds occasionally and 5 pounds shoulder to overhead. *See* id. She checked off that "Client appears to have put forth **XX__full effort**." *Id.* (emphasis in original). Ms. Muszynski cited no objective bases for her opinions. *Id.* In finding that "Ms. Muszynski cites no objective evidence in support of her opinion" and "provides no explanation for her assessment," the ALJ thus offered a germane and supported reason to reject that opinion. *See* AR 27; *Molina*, 674 F.3d at 1111.

### C. Examining Physician: Dr. Deven A. Karvelas

Dr. Karvelas examined Ms. Hatfield in January 2015, having also reviewed records of three hospital visits and an x-ray of her left knee. *See* AR 514. He opined that Ms. Hatfield can lift and carry 50 pounds occasionally and 25 pounds frequently. *See* AR 514-18. He observed Ms. Hatfield to have an antalgic gait with a shortened stance phase on the left, and normal ranges of motion. *See* AR 516. He opined that Ms. Hatfield did not need an assistive device. *See* AR 518. Dr. Karvelas also noted, however, that "[g]iven the generally progressive nature of osteoarthritis, [Ms. Hatfield's] prognosis for improvement going forward is poor. I do suspect that eventually she will be a candidate for total knee replacement on the left. It remains to be seen what the most appropriate timing for this will be." AR 517.

The ALJ gave "partial weight" to Dr. Karvelas's opinion, finding it "somewhat consistent with his exam findings." *See* AR 27. But the ALJ found "that the record supports additional

ORDER - 12

exertion [sic], postural, and environmental limitations," which she included in the RFC. AR 27.

Ms. Hatfield contends that the ALJ erred in assigning greater weight to Dr. Karvelas's opinion than Dr. Medani's. She asserts that "[o]ne cannot reasonably prefer Dr. Karvelas' uninformed opinion over that of . . . [the] treating physician who had the benefits of . . . her longitudinal diagnostic picture," including more recent MRI results. Dkt. 13, p. 8-9; *see* AR 519-26.

An ALJ is not required to assign greater weight to a treating physician's opinion than that of a non-treating physician. *Thomas*, 278 F.3d at 957. As noted above, the ALJ did not err in assigning minimal weight to Dr. Medani's opinion. And although Ms. Hatfield contends that the ALJ erred in giving partial weight to Dr. Karvelas's opinion because he offered it without the benefit of diagnostic imaging of Ms. Hatfield knees and spine, she points to no medical opinion that interpreted that imaging. Neither Dr. Medani's nor Ms. Muszynski's opinion mention such diagnostic results. Without a medical source's interpretation of or diagnosis based on that objective medical data, the ALJ was not in a position to evaluate it—and this Court is not in a position to evaluate it, for the same reason. *See Manso–Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996) ("With few exceptions, . . . an ALJ, as a layperson, is not qualified to interpret raw data in a medical record."). Moreover, the ALJ's observation "that the record supports additional exertion [sic], postural, and environmental limitations" indicates that she did not restrict her consideration of the longitudinal record to what existed at the time Dr. Karvelas gave his opinion. *See* AR 27. Ms. Hatfield does not show any error in the ALJ's treatment of Dr. Karvelas's opinion.

D. Reviewing Physician: Dr. Leslie E. Arnold

Dr. Leslie E. Arnold reviewed Ms. Hatfield's medical record in September 2014. *See* AR

ORDER - 13

28, 89. Dr. Arnold opined that Ms. Hatfield is limited to standing or walking for 2 hours in a normal workday. *Id.* The ALJ accorded "partial weight" to Dr. Arnold's opinion, and rejected the standing/walking limitations because Ms. Hatfield "has a prescribed walker but admits she does not use her walker at work." AR 28.

Ms. Hatfield challenges the ALJ's rejection of Dr. Arnold's opinion that Ms. Hatfield could only stand and walk for two hours out of eight in a workday. She contends that the ALJ's reasoning is unsupported because Ms. Hatfield's current job is sedentary—and so she would not need a walker—and because Arnold's limitation is more consistent with Dr. Medani's and Ms. Muszynski's opinions. *See* AR 28, 42-44, 71.

The ALJ's reasons for rejecting this specific limitation were specific, legitimate, and supported: Dr. Arnold reviewed Ms. Hatfield's records a second time in February 2015 and opined that she could stand/walk for six hours of an eight-hour workday. AR 108. Dr. Karvelas's opinion that Ms. Hatfield could stand/walk for six hours also contradicts Dr. Arnold's September 2014 opinion. AR 518. The ALJ was entitled to resolve the contradictions between these opinions, and the ALJ did so with specific, legitimate reasons. *See Allen*, 749 F.2d at 579.

E. <u>Reviewing Doctors: Eugene Kester, M.D. and Dr. Jan Lewis, Ph.D.</u>

Ms. Hatfield contends also that the ALJ erred in assigning "significant" weight to Dr. Kester and Dr. Lewis's opinions on her mental health. See AR 101, 102. She points to her mental-health treatment records after Dr. Kester and Dr. Lewis gave their opinions. See AR 570, 584. Although those records show that Ms. Hatfield's mental-health providers diagnosed her with and treated her for depression and anxiety, Ms. Hatfield does not point to any evidence that her mental health conditions significantly impair her ability to work. *See* AR 582. Ms. Hatfield has not shown the ALJ erred in crediting Dr. Kester and Dr. Lewis.

III. The ALJ's RFC Assessment

The Commissioner uses a claimant's residual functional capacity (RFC) assessment at step four of the five-step "sequential evaluation process" to determine whether he or she can perform his or her past relevant work, and at step five to determine whether he or she can do other work. SSR 96-8p, 1996 WL 374184 *2.

The RFC is what the claimant "can still do despite his or her limitations." *Id.* A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ must also discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ found Ms. Hatfield had the RFC

> **to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift 20 pounds occasionally and 10 pounds frequently; she can stand and or walk 5 hours in an 8-hour workday; she can sit 6 hours in an 8-hour workday with usual and customary breaks; she can never climb ladders, ropes, or scaffolds; she is otherwise limited to occasional postural activities (i.e., occasionally climb ramps and stairs, balance, stoop, crouch, kneel); she is limited to occasional bilateral lower extremity pushing and pulling; she must avoid concentrated exposure to extreme cold, vibration, and hazards such as heights and dangerous moving machinery**.

AR 23 (emphasis in original).

Ms. Hatfield asserts this assessment is incorrect because it is based on an erroneous assessment of the medical evidence, and an improper discounting of Ms. Hatfield's credibility by the ALJ. *See* Dkt. 13, 12-13. As discussed above, however, the Court disagrees that the ALJ

ORDER - 15

erred as alleged. Accordingly, the ALJ did not err in reaching the RFC above.

## IV. The ALJ's Step Four and Five Determination

The claimant has the burden to show that she cannot perform her past relevant work. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). Nonetheless, "the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). The ALJ compares the claimant's RFC with the demands of her past work. *Id.* at 844-45 (quoting 20 C.F.R. § 416.920(e)). To find the claimant not disabled at step four, the ALJ must find that the claimant can perform either "[t]he actual functional demands and job duties of a particular past relevant job; or . . . [t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Id.* at 845.

If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process the ALJ must find that there are a significant number of jobs in the national economy the claimant can perform. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101. This Court will uphold an ALJ's step five determination if the weight of the medical evidence supports the hypothetical the ALJ posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987). The ALJ may omit from that description any limitations he or she finds do not exist. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Here, the ALJ found at step four that Ms. Hatfield is capable of performing her past relevant work, which the ALJ indicated was as a moving coordinator. AR 28. Ms. Hatfield points out that her work as a moving coordinator at a storage facility could not qualify as past relevant work because the ALJ properly found that it did not amount to "substantial gainful activity." *See*

ORDER - 16

AR 20-21. Ms. Hatfield is correct that the ALJ erred at step four, because the regulation defines past relevant work in part as "substantial gainful activity." 20 C.F.R. § 404.1560(b). However, this error was harmless because, as discussed below, the ALJ did not err in finding Ms. Hatfield not disabled at step five. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1042-43 (9th Cir. 2008) (holding step four error was harmless where ALJ properly found claimant not disabled at step five).

At step five, the ALJ found in the alternative that Ms. Hatfield could perform other jobs existing in significant numbers in the national economy. *See* AR 29. Based on the vocational expert's answers to hypothetical questions concerning an individual with the same age, education, work experience and RFC as Ms. Hatfield, the ALJ determined that Ms. Hatfield could work as a grain picker or maid. *See* AR 29.

Ms. Hatfield contends the ALJ erred at steps four and five because "it is clear that [Ms. Hatfield] does not have the capacity for sustained light work when her exertional and non-exertional limitations are taken into account." Dkt. 13, pp. 15-16. As discussed above, however, the record supports the ALJ's reasoning in weighing the medical evidence and Ms. Hatfield's testimony to arrive at the RFC. Accordingly, she did not err in her step five analysis. *See Rollins*, 261 F.3d at 857.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly determined Ms. Hatfield to be not disabled. Defendant's decision to deny benefits therefore is AFFIRMED.

DATED this 18th day of September, 2017.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

ORDER - 17